## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**TED KNOX,**
**#N92676,**

              **Plaintiff,**                   **Case No. 21-cv-00483-SPM**

**v.**

**ROB JEFFREYS,**
**WEXFORD HEALTH SOURCES, INC.,**
**WARDEN LAWRENCE,**
**A.W. JONES,**
**A.W. WILLIS,**
**DR. SIDDIQUI,**
**ANGELA CRAIN,**
**ROD SKIDMORE,**
**N.P. MOLDENHAUER,**
**N.P. ZIMMER,**
**DR. BUTALID,**
**DR. ROBERT,**
**MAJOR EVOLI,**
**LT. BURNER,**
**LT. JETTON,**
**JOHN DOE 1,**
**SGT. BENNETT,**
**JOHN DOE 2,**
**C/O MATT,**
**C/O HARMON,**
**C/O KENFRED,**
**C/O NEWTON,**
**DEWAYNE,**
**C/O KERN,**
**C/O KNIGHT,**
**C/O EVANGER,**
**C/O BENDER,**
**C/O CLARK,**
**C/O COREY,**
**C/O LATRENT,**
**NURSE OETJEN,**
**NURSE ANDERSON,**
**NURSE BURNS,**
**NURSE KIRK,**
**NURSE BURT,**
**NURSE WILLIAMS,**

**NURSE WALTERS,**
**NURSE GREGSON,**
**NURSE HAMBY,**
**NURSE RAYBURN,**
**NURSE TRIPP,**
**NURSE ENGELAGE,**
**NURSE MARY ANN,**
**NURSE LANG,**
**NURSE LIZ,**
**NURSE SHARON,**
**NURSE MELISSA,**
**NURSE RACHEAL,**
**MS. STEELHORN, and**
**MS. CRAWFORD,**

                              **Defendants.**

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Ted Knox, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights and his rights protected by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq.* Knox claims that IDOC and Wexford Health Sources, Inc. have a policy requiring inmates housed in North Two House to walk up and down stairs to receive daily insulin shots. As a result of the policy and despite his physical disability, he was forced to take the stairs for his insulin while he was housed in North Two Cell House from December 2019 until February 2020, resulting in severe pain and missed insulin treatments. On September 14, 2021, Knox filed a motion requesting a preliminary injunction and a temporary restraining order. (Doc. 11). Before addressing the request for emergency injunctive relief, the Court must conduct a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails

to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Knox alleges the following: He suffers from several medical issues. (Doc. 1-1, p. 2). Knox is morbidly obese, has left hip osteoarthritis, an enlarged heart, high blood pressure, and a partial collapsed lung. He is also diabetic. (*Id.*). On November 27, 2019, he was moved from West House to North Two House, One Gallery. (Doc. 1-1, p. 1). North Two House, One Gallery houses low-aggressive inmates who are in need of regular or specialized medical attention, such as inmates on hospice, who require the use of wheelchairs or crutches, or who have diabetes. This housing unit also houses all of the general population inmates who have low gallery permits. (*Id.*). Knox has a low gallery permit, which mandates that he is not to walk up any flight of stairs. (*Id.* at p. 2).

While he was housed in West House, Knox received his daily insulin shots at around 2:00 a.m. and 2:00 p.m. at his cell. (*Id.* at p. 1). But after moving to North Two House, Knox was repeatedly forced to walk up and down several flights of stairs to the fifth floor twice a day to receive his insulin. Each time staff came to his cell to retrieve him for his insulin treatment, Knox would tell them he had a low gallery permit, and he was in severe pain. He would request to use the elevator or ask for the insulin be administered at his cell. Knox was denied use of the elevator and told by staff that there is a policy for North Two House prohibiting insulin and needles in the galleries and the administration of insulin a "cell front." (*Id.* at p. 6, 10, 17, 19; Doc. 1, p. 29).

In addition to this insulin administration policy, Knox was subjected to an extreme handcuffing policy. He would be cuffed prior to leaving his cell and would remain handcuffed while walking up the stairs and placed in a "locked bull-pen" awaiting his insulin shot. He was

cuffed again to walk back down the stairs and return to his cell. (*Id.* at p. 2). Often the handcuffs were overtightened causing him pain, and the handcuffs made it difficult for him to keep his balance as he climbed and descended the stairs.

From December 10, 2019 through February 9, 2020, there were several occasions when staff came to escort Knox for his insulin treatment, and he was physically unable to walk or move because of the severity of his pain. (*Id.* at p. 4, 5, 7-9, 12-16, 18, 19-21, 24, 25). When Knox was in too much pain to walk to the fifth floor, staff refused to administer the insulin to him, and he did not receive it. After missing several doses, Knox's blood sugar became extremely high, and he would vomit after eating. (Doc. 1-1, p. 14, 15, 18, 20, 24-26).

While housed in North Two House, Knox repeatedly alerted medical staff of his issues using the stairs. After moving to his new cell, Knox submitted a medical sick call form requesting to be seen by a doctor in order to renew his low gallery permit and discuss the conditions of the permit. He also complained of shortness of breath and abnormal heart beats while climbing the stairs for his insulin treatment. (Doc. 1-1, p. 3). On December 4, 2019, he saw Nurse Engelage, who refused to issue a referral for a further appointment with a doctor regarding Knox's complaints of discomfort due to regularly climbing stairs. Two days later, Knox saw Nurse Practitioner Moldenhauer. NP Moldenhauer refused to renew Knox's low gallery permit and to notify North Two staff that Knox was restricted from walking up and down stairs as a condition of his low gallery permit. (*Id.*). NP Moldenhauer told Knox, "the doctor should've never given [you] a [low gallery permit] and walking up the stairs would help [you] lose some weight." (*Id.* at p. 4).

On December 22, 2019, Knox had an appointment with Dr. Butalid for his complaints about walking up the stairs for his insulin treatment. (Doc. 1-1, p. 4). Dr. Butalid stated that he was not "about to change any policies for insulin treatment in North-Two and [Knox] would have to take that issue up with Dr. Siddiqui, the medical director." At this appointment, his low gallery

Page 4 of 22

permit was extended another year. (*Id.*).

On December 30, 2019, Knox saw Nurse Engelage during sick call for left hip pain. (Doc. 1-1, p. 4). He told Nurse Engelage that he was in severe pain and discomfort from walking up and down the stairs for his insulin. Nurse Engelage told Knox that he needed to lose some weight. (*Id.* at p. 5). She also said she would inform Dr. Siddiqui of his complaints. After seeing Nurse Engelage, Knox saw Nurse Practitioner Zimmer that same day to renew a prescription of foot cream. He told her that he was having sharp pains shooting down his left side and that the pain becomes more severe every time he walks up and down the stairs hand cuffed for his insulin shot. NP Zimmer yelled that she did not have time to discuss any other issues and that she "had heard about [his] complaints regarding insulin treatment in North-Two." (*Id.*).

On January 4, 2020, Knox had another medical appointment with Dr. Butalid. (Doc. 1-1, p. 6). He told her that he was in severe pain because he was being forced to walk up and down stairs each day for his insulin treatment. (*Id.* at p. 7). Knox ask for a permit to have his insulin administered at his cell door. Dr. Butalid stated he did not make the policies at Menard, and he would not issue a permit for "cell front insulin" or for the use of the elevator. Dr. Butalid ordered an x-ray of Knox's left hip and prescribed naproxen. (*Id.*).

On January 9, 2020, Knox was called to Dr. Butalid's office to discuss his insulin refusals. (Doc. 1-1, p. 9). Knox tried to explain to Dr. Butalid that he was not refusing his insulin treatments but that the nurses and nonmedical staff were refusing to provide him insulin on days he was physically unable to walk up the stairs. Nurse Lang, who was also at the meeting, interrupted Knox. Nurse Lang began shouting that Knox was "a fat and lazy grievance writer" and then called for correctional officers to come retrieve Knox from the office, "the appointment was over." (*Id.*).

Knox told a mental health professional, Crawford, on January 16, 2021, that he was being denied his insulin treatment and compelled to violate the conditions of his low gallery permit.

(Doc. 1-1, p. 13). He told her that the situation was causing him stress and discomfort and he feared he might die if staff continued to withhold insulin. Crawford said there was nothing she could do and refused to make a referral to medical staff or to her supervisor. (*Id.*).

Knox saw Nurse Tara at sick call on January 17, 2020 for severe pain in his hip and shooting pains down his leg. (Doc. 1-1, p. 12, 14). He told her that the naproxen was not easing the pain, and he had discomfort in his hip and back. Knox was then seen by NP Moldenhauer on January 24, 2020. (*Id.* at p. 16). NP Moldenhauer refused to issue Knox a permit to have his insulin administered at "cell front" or a permit to access the elevator for insulin treatments. NP Moldenhauer prescribed physical therapy to help Knox become "mobile enough to go up and down stairs," even though NP Moldenhauer knew that Knox had a low gallery permit prohibiting his use of stairs. (*Id.*).

Knox was evaluated by Robert for physical therapy on January 30, 2020. (Doc. 1-1, p. 18). Knox ask Robert to intervene and tell medical and nonmedical staff that he needs access to the North Two House elevator for his insulin treatment. He told Robert that walking up and down stairs was very painful and, on some days, he could not even get out of bed and was denied insulin. Robert refused to help and told Knox that he was only there to evaluate him for physical therapy. (*Id.*).

Knox saw Nurse Engelage on February 5, 2020, for shooting pains through his left hand and foot and because he was vomiting after meals. (Doc. 1-1, p. 20, 23). He had previously been given Pepcid, but the medicine was not working. At the appointment, Knox told Nurse Engelage that his pain, nausea, and vomiting became worse each time he was denied insulin. Nurse Engelage stated that she "didnt feel sorry for [Knox], it wasn't their fault [he] refuses to come out for insulin treatment." Nurse Engelage did not submit a referral for Knox to see a medical doctor. (*Id.* at p. 23).

Around midnight on February 7, 2020, Lieutenant Burner and Correctional Officer Matt came to Knox's cell and told him they were "fed-up with [Knox] writing grievances, and was going to allow [him] access to the elevator for insulin treatment." (Doc. 1-1, p. 22). When they came back to his cell around 2:00 a.m. to take him for his insulin treatment, Lieutenant Burner and Correctional Officer Matt handcuffed him extremely tight, escorted him via the elevator, and placed him in an isolation cell separate from the other diabetic inmates. Knox was forced to receive his treatment last, behind the other inmates, and was forced to wait thirty minutes for treatment in pain from his handcuffs. (*Id.*). From February 7 through February 10, the staff escorting Knox during his 2:00 a.m. insulin treatment times continued to allow him to use the elevator, but staff escorting Knox in the afternoon did not. (*Id.* at p. 24, 25, 26).

Knox had a medical appointment with Dr. Siddiqui on February 11, 2020. (Doc. 1-1, p. 26). Dr. Siddiqui stated that "he was fed-up with all of [Knox's] crying," and issued an elevator permit. That afternoon and during the remainder of the time Knox was housed in North Two, staff took him to his insulin treatment using the elevator. (*Id.*).

On February 13, 2020, Correctional Officer Harmon came to Knox's cell and stated that "he and the rest of the staff was already fed-up with the elevator B.S. and they was working on getting Plaintiff moved." (Doc. 1-1, p. 27). On February 14, 2020, Knox was moved to North One House and placed behind a steel door. In North One, Knox was given his insulin treatment at his "cell front."

### PRELIMINARY DISMISSALS

The Court will dismiss Evoli, Armbuster, Clovis, and Jones, as Knox has failed to state a claim against these individuals. In the Complaint, Knox states that Evoli is the major of security in North Two and is "well aware" of his Complaints. (Doc. 1-1, p. 34). This conclusory statement without any supporting factual allegations is not sufficient to support a claim under the Eighth

Amendment. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"). Thus, any claims against Evoli are dismissed without prejudice.

Knox lists Armbuster as a defendant under the section of the Complaint labeled "Parties," but this individual is not listed in the case caption, nor anywhere in the statement of claim. (Doc. 1-1, p. 9). Federal Rule of Civil Procedure 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibso*n, 355 U.S. 41, 47 (1957)). Listing Armbuster as a party does not state a claim against him, and the Court will not treat parties not listed in the caption as defendants. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Any claims against Armbuster are also dismissed without prejudice.

Knox states that Defendant Clovis compelled him to violation the conditions of his low gallery permit by having him walk up to the fifth floor to receive insulin. (Doc. 1-1, p. 10). But Clovis is also not listed as a defendant in the case caption and is not a party to this case. Any claims against him are therefore dismissed without prejudice.

Finally, the only allegation against Assistant Warden Jones is that he "concurred with defendants Siddiqui and Crains response in grievance #133-1-20." (Doc. 1-1, p. 33). The denial of a grievance, standing alone, is not enough to violate the United States Constitution. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017); *George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). Accordingly, any claims against Assistant Warden Jones are dismissed without prejudice.

DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** ADA and RA claim against Jeffreys, Wexford Health Sources, Inc., Lawrence, Willis, Siddiqui, Crain, and Skidmore for forcing Knox to use the stairs in order to receive his insulin treatments.

**Count 2:** Eighth Amendment deliberate indifference claim against Oetjen, Newton, Jetton, Harmon, Kirk, Knight, Anderson, Matt, Mary Ann, Racheal, John Doe 1, Kenfred, Burner, Burns, Gregson, Evanger, Latrent, Engelage, Crain, Moldenhauer, Butalid, Lang, Siddiqui, Zimmer, Skidmore, Crawford, Robert, Dewayne, and Jeffreys for repeatedly denying Knox insulin treatments.

**Count 3:** Eighth Amendment deliberate indifference claim against Newton, Harmon, Liz, Burns, Kirk, Hamby, Burner, Oetjen, Kenfred, Walters, Anderson, Mary Ann, Sharon, Bender, Clark, Matt, Williams, John Doe 1, John Doe 2, Knight, Burt, Melissa, Bennett, Tripp, Corey, Rayburn, Gregson, Engelage, Crain, Crawford, Butalid, Lang, Moldenhauer, Siddiqui, Skidmore, Robert, Dewayne, Steelhorn, and Jeffreys for forcing Knox to walk up flights of stairs to receive his insulin treatments in violation of his lower gallery permit.

**Count 4:** Eighth Amendment claim against Jeffreys, Lawrence, Willis, Siddiqui, Crain, Skidmore, and Wexford Sources, Inc., for maintaining a policy, custom, practice, or procedure of denying insulin treatments to inmates in North Two who are physically unable to walk to the designated room for treatment.

**Count 5:** Eighth Amendment claim of cruel and unusual punishment against Matt, Burner, and Kern for the extreme handcuffing procedures used when escorting Knox to and from his insulin treatments.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

---

[1] *See Bell Atlantic Corp.,* 550 U.S. 544, 555 (2007).

**Count 1**

Under the ADA, "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The RA also prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. The analysis under the ADA and RA is the same, except that the RA is not restricted to public entities and includes as an additional requirement, the receipt of federal funds, which all states accept for their prisons. *Jaros v. Ill. Dep't of Corr.*, 685 F.3d 667, 671 (7th Cir. 2012) (citing 29 U.S.C. § 705(2)(B)). *See also Ruffin v. Rockford Mem'l Hosp.,* 181 F. App'x 582 n. ** (7th Cir. 2006). Under both statutes, discrimination includes the failure to accommodate a disability. *Jaros*, 684 F.3d at 672 (citation omitted).

Knox alleges that he suffers from a disability, osteoarthritis in his hip, which makes it difficult for him to walk. He was denied accommodation for his disability in that he was prohibited from using the elevator to receive his insulin treatments or given treatments at his cell. As a result, he was forced to climb stairs to obtain his medication, causing severe pain, or he was completely denied insulin treatments altogether. These allegations are sufficient to articulate a colorable ADA and RA claim. *See* 42 U.S.C. § 12132; 29 U.S.C. §§ 794-94e, *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

Knox names a number of defendants in relation to his ADA and RA claims. (Doc. 1-1, p. 5-7, 30-31). Individual employees of IDOC or Wexford Health Sources, Inc. ("Wexford"), however, are not amendable to suit under either statute. *Jaros*, 684 F.3d at 670. *See Stanek v. St Charles Cmty. Unit Sch. Dist. No. 303,* 783 F. 3d 634, 644 (7th Cir. 2015) (noting no individual capacity claims for discrimination under the RA and ADA). A claim under the ADA must be made against a public entity, in this case IDOC. Therefore, IDOC Director Rob Jeffreys, in his official

capacity, is the proper defendant for Knox's ADA claim. *Jaros*, 684 F.3d at 670, n. 2 (the proper defendant is the agency or its director in his official capacity). And as the State of Illinois accepts federal funds for its prisons, Knox's RA claim will also proceed against Director Jeffreys in his official capacity. The ADA and RA claims are dismissed as to Lawrence, Willis, Dr. Siddiqui, Angela Crain, and Rod Skidmore.

The ADA claim is also dismissed as to Wexford. (Doc. 1, p. 5). Courts in this Circuit have repeatedly "refused to recognize a private corporation as an instrumentality of the State of Illinois simply because it contracts with [IDOC] to provide medical services to inmates." *Bradley v. Wexford, Inc.,* No. 19-cv-00752-SMY, 2019 WL 3573481, at *3 (S.D. Ill. Aug. 6, 2019) (collecting cases).

Although the RA is not restricted to public entities, Knox's RA claim against Wexford is also dismissed. Knox states that Wexford contracts with the State of Illinois to provide health care services to inmates in IDOC. (Doc. 1-1, p. 5). He does not assert that Wexford receives federal funds, and the "Seventh Circuit has rejected Rehabilitation Act claims against a party that receives federal funds indirectly via a contract with a state." *Scott Eby v. Christian Okezie,* No. 19 C 8404, 2021 WL 4146882, at *6 (N.D. Ill. Sept. 13, 2021) (citing *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 120 (7th Cir. 1997)).

For these reasons, Count 1 will proceed only against Rob Jeffrey's in his official capacity and is dismissed as the other defendants.

## Count 2

The Eighth Amendment prohibits cruel and unusual punishment of convicted persons. *See* U.S. CONST., amend. VIII. It safeguards inmates against pain and suffering that serves no penological purpose. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The Court applies a two-part analysis to Eighth Amendment claims of

inadequate medical care. *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). The plaintiff must plead that he suffered from "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Chatham v. Davis,* 839 F. 3d 679, 684 (7th Cir. 2016).

Knox claims he is diabetic and was denied his insulin treatments by Oetjen, Newton, Jetton, Harmon, Kirk, Knight, Anderson, Matt, Mary Ann, Racheal, John Doe 1, Kenfred, Burner, Burns, Gregson, Evanger, Latrent, and Harmon on days when he was unable to physically walk up the stairs. This is sufficient for Count 2 to proceed against these Defendants.

Additionally, Knox claims he notified Engelage, Crain, Moldenhauer, Butalid, Lang, Siddiqui, Zimmer, Skidmore, Crawford, Robert, Dewayne, and Jeffreys that he was being denied insulin due to his inability to walk, and they did nothing to ensure he received adequate treatment for his diabetes. Count 2 will also proceed against Engelage, Crain, Moldenhauer, Butalid, Lang, Siddiqui, Zimmer, Skidmore, Crawford, Robert, and Dewayne. *See Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015)*.*

Knox will not be allowed to proceed with Count 2 against Jeffreys. Knox claims that he appealed his various grievances regarding insulin treatments to Rob Jeffreys, the Director of IDOC. (Doc. 1-1, p. 29-30). Jeffreys concurred with and condoned the "actions and in-actions of the named defendants" by denying his grievances. (*Id.*). As mentioned, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007). Thus, his allegations are insufficient to support and Eighth Amendment claim, and Count 2 is dismissed as to Jeffreys.

### Count 3

Knox claims he has chronic knee, back, and hip pain that at times is so severe he is unable to walk. The Court presumes at this point that he suffers from a serious medical condition. *See*

*Thompson v. Godinez*, 561 F. App'x 515, 518 (7th Cir. 2014); *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997).

Knox has also sufficiently pled that the nurses and correctional officers who escorted him to and from his insulin treatments acted with deliberate indifference in having him use the stairs. They were aware he was in severe pain and had a lower gallery permit, but they required him to take the stairs each day unnecessarily prolonging his pain and exacerbating his various illnesses. Thus, Count 3 will proceed against Newton, Harmon, Liz, Burns, Kirk, Hamby, Burner, Oetjen, Kenfred, Walters, Anderson, Mary Ann, Sharon, Bender, Clark, Matt, Williams, John Doe 1, John Doe 2, Knight, Burt, Walters, Melissa, Bennett, Tripp, Corey, Rayburn, and Gregson.

Count 3 will also proceed against Engelage, Crain, Crawford, Butalid, Lang, Moldenhauer, Siddiqui, Skidmore, Robert, Dewayne, and Steelhorn who knew he was being forced to daily use the stairs causing him pain but did not act to ensure that an alternative way was provided for Knox to receive his insulin treatments.

For the reasons provided in Count 2, Count 3 will be dismissed as to Jeffreys. Knox's only allegation is that Jeffreys denied his grievances on appeal, which is not sufficient to plead deliberate indifference.

### Count 4

Knox claims that IDOC and Wexford employed diabetic insulin treatment policies and procedures that denied inmates with physical disabilities and medical low gallery permits in North Two insulin treatments unless they walked up several flights of stairs. (Doc. 1-1, p. 34-35). This policy was then enforced and implemented by Defendants and resulted in his denial of insulin treatments and violation of his low gallery permit.

Knox seeks injunctive relief and pursues his claims against Jeffreys, Lawrence, and Willis in their official capacities. (*See* Doc. 1, p. 5-6). In order to seek injunctive relief on a claim that a governmental policy, practice, or custom led to a constitutional violation, a plaintiff is:

> required to name the proper party in their official capacity. Such an official capacity suit is against the office of the person and not the person himself. Thus, no personal involvement is required for Defendants to be subject to the equitable jurisdiction of this Court (for prospective injunctive relief).

*Monroe v. Rauner,* No. 18-cv-00156-NJR, 2018 WL 6259248, at *3 (S.D. Ill. Nov. 30, 2018) (citing *Ex Parte Young*, 209 U.S. 123, 157 (1908)). "The proper parties in a claim for injunctive relief include the supervisory government officials who would be responsible for ensuring injunctive relief is carried out." *Johnson v. Randle,* No. 10-cv-0135-MJR-SCW, 2021 WL 1964996, at *11 (S.D. Ill. May 31, 2012) (citing *Gonzalez v. Feinerman*, 663 F. 3d 311, 315 (7th Cir. 2011). Count 4 will therefore proceed against Director Jeffreys, Warden Lawrence, and Assistant Warden Willis in their official capacities.

Count 4 will be dismissed as to Jeffreys, Lawrence, and Willis in their individual capacities.[2] Knox does not assert any personal conduct on the part of Jeffreys, Lawrence, or Willis regarding the implementation of a policy as to Knox. He asserts that they "employed" the staff who acted pursuant to a practice they "espoused." (Doc. 1-1, p. 31). The allegation that they adopted or were somehow involved in implementing the insulin treatment policy for North Two does not plead that they had actual knowledge of Knox's situation and then were deliberately indifferent to it. Furthermore, under Section 1983 there is no supervisory liability. *See T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010). Supervisors and employers cannot be held liable for the errors of their subordinates solely due to their position. Because there are no other factual

---

[2] In listing the parties, Knox states he is suing Jeffreys, Lawrence, Jones, Willis, and Wexford in their official and individual capacities. (Doc. 1-1, p. 5-6). All other Defendants are sued in their individual capacities only.

allegations regarding Defendants' conduct, Count 4 will be dismissed as to Jeffreys, Lawrence, and Willis in their individual capacities.

Count 4 will also be dismissed as to Dr. Siddiqui, Angela Crain, and Ron Skidmore. They cannot be held liable because they are in supervisory positions. Additionally, to the extent Knox is claiming they implemented the policy resulting in the denial of insulin, the Court has already found that he has sufficiently stated an Eighth Amendment claim against them for denying him insulin in Count 2. There is no need to have an additional count specifying that they did so pursuant to an unconstitutional policy.

Count 4 will proceed against Wexford in its individual and official capacity. *See Woodward v. Corr. Med. Serv. of Ill., Inc*., 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).

### Count 5

Knox claims that when he was taken to the fifth floor to receive insulin, he was subjected to extreme handcuffing procedures. (Doc. 1-1, p. 2). He was handcuffed while walking up and down the stairs and while waiting for his turn to receive treatment. As a result, his wrists became bruised and his hands cramped. (*Id.* at p. 26, 28). Knox specifies two occasions when the handcuffs were placed on him excessively tight by Matt, Burner, and Kern. (*Id.* at p. 22, 25). He asserts that during other medical visits on the fifth floor, inmates are not subjected to the same strict handcuffing procedures. (*Id.* at p. 3).

Knox has failed to plead a constitutional violation regarding the handcuff procedures in North Two. A policy of requiring inmates to remain handcuffed while going to, waiting for, and returning from insulin treatments does not violate the Eighth Amendment as a matter of law. *See Perkins v. Pfister,* 711 F. App'x 335, 337 (7th Cir. 2017). Additionally, during the two incidents where Knox alleges the handcuffs caused him "extreme pain" or were "extremely tight," he does

not claim that he notified anyone. (Doc. 1-1, p. 22, p. 25). Knox filed two sick-call slips, on February 11, 2020 and on February 15, 2020 for hand cramps and pain in his arms, but he was transferred out of North Two on February 14, a few days later. There are no factual allegations that any of the Defendants acted with deliberate indifference to his health or safety regarding the handcuff procedures employed. Thus, Count 5 is dismissed.

### MOTION FOR RECRUITMENT OF COUNSEL

Knox has filed a Motion for Recruitment of Counsel (Doc. 10), which is **DENIED**.[3] Knox discloses several unsuccessful efforts to contact attorneys via written correspondence. He includes letters from five firms declining representation. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action *pro se*, Knox indicates that he has only a high school education, no legal education, and limited access to legal materials due to his incarceration. He also expresses concern about his ability to handle discovery and investigating his claims since he is serving a life sentence. Nonetheless, the Court finds that Knox can proceed *pro se*, at least for now. His pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. Knox is an experienced litigator and has prosecuted many cases in this district. *See Knox v. Powers*, No. 5-cv-00114-PMF, *Knox v. Furlong*, No. 10-cv-01001-MJR-DGW, *Knox v. Butler*, No. 17-cv-00494-DWD, *Knox v. Ross*, No. 17-cv-00571-SMY, *Knox v. Butler*, No. 17-cv-00572-DWD, *Knox v. Mall*, No. 17-cv-00574-MJR-SCW, *Knox v. Lashbrooks*, No. 19-cv-00382-SMY. Knox is competent to try this matter without representation at this time. Once discovery has commenced, if Knox has significant difficulty, he may refile his motion.

### TRO/PRELIMINARY INJUNCTION MOTION

---

[3] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

Knox has filed a motion for Preliminary Injunction and Temporary Restraining Order. (Docs. 11, 12). He claims that in retaliation for fling this lawsuit, he received a false disciplinary report and is now housed in North Two segregation in violation of his low gallery permit. He is again being forced to walk up and down stairs or face further disciplinary charges for disobeying order. Knox was denied insulin on September 6, 7, 9, and 9, when he was physically unable to walk up stairs to receive the medication. He was also denied his hepatitis B and C shots because he was unable to climb the stairs to the fifth floor infirmary. In retaliation, Knox was also denied his diabetic snack tray on September 6, 7, 8, 9, and 10. He was told he was not on the list, but it is common knowledge that diabetics receive a snack tray following afternoon doses of insulin.

In a supplement, filed September 20, 2021, Knox states that on September 16 he was moved to a different cell in North Two. He is now housed in the general population side of North Two House, the same location where he was celled during the relevant times stated in the Complaint. (Doc. 12, p. 2). On September 16, he was allowed to use the elevator for his afternoon insulin treatment. On September 17, during the morning treatment time, staff told Knox they did not have time to put him on the elevator, and the insulin was provided to him at his "cell front." That afternoon, Defendant Tripp and other staff denied Knox insulin after he told them he was physically unable to walk up the stairs. He showed them his low gallery permit and his elevator for insulin injection permit, but they ignored his low gallery permit and focused on the fact his elevator permit is expired. Knox explained that he did not seek renewal of the elevator permit because he was moved from North Two in February 2020, and no longer required the permit. Lieutenant Westerman yelled at Knox that if he started complaining again, he would be moved to West or East House where he can get "cell front" insulin. Knox claims that West and East House are where aggressive inmates are sent as punishment.

There are significant differences between a temporary restraining order ("TRO") and a

preliminary injunction. A TRO can be issued without notice to the party to be enjoined, but it may last no more than fourteen days. FED. R. CIV. P. 65(b)(2). Further, a TRO may be issued without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan,* 511 U.S. 825, 845 (1994).

Without expressing any opinion on the merits of any of Knox's other claims for relief, the Court concludes that a TRO should not be issued in this matter. The Prison Litigation Reform Act requires that any grant of prospective relief, including TROs, "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs" and cannot issue "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. Federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Knox states that he has not sought renewal of his medical elevator permit, nor has he claimed that he has filed a grievance, sick-call request, or used prison procedures to resolve his issues once he transferred cells on September 16, 2021. As it does not appear that the appropriate prison officials have been notified of Knox's current situation, the Court does not find it appropriate to order the renewal of medical permits or direct that Knox's insulin be administered in a certain manner. Accordingly, the motion for a TRO is denied without prejudice at this time.

Knox's request for a preliminary injunction will remain pending until Defendants have been served. Defendant Lawrence, as the Warden of Menard, is ordered to respond to the request for a preliminary injunction within **14 days** of service of the pleadings in this case, at which point the Court will determine the need for a hearing on the motion requesting a preliminary injunction.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **Count 1** will proceed against **Jeffreys** in his official capacity and is **DISMISSED** against **Wexford, Lawrence, Willis, Siddiqui, Crain,** and **Skidmore. Count 2** will proceed against **Oetjen, Newton, Jetton, Harmon, Kirk, Knight, Anderson, Matt, Mary Ann, Racheal, John Doe 1, Kenfred, Burner, Burns, Gregson, Evanger, Latrent, Harmon, Engelage, Crain, Moldenhauer, Butalid, Lang, Siddiqui, Zimmer, Skidmore, Crawford, Robert,** and **Dewayne** is **DISMISSED** against **Jeffreys**. **Count 3** will proceed against **Newton, Harmon, Liz, Burns, Kirk, Hamby, Burner, Oetjen, Kenfred, Walters, Anderson, Mary Ann, Sharon, Bender, Clark, Matt, Williams, John Doe 1, John Doe 2, Knight, Burt, Walters, Melissa, Bennett, Tripp, Corey, Rayburn, Gregson, Engelage, Crain, Crawford, Butalid, Lang, Moldenhauer, Siddiqui, Skidmore, Robert, Dewayne,** and **Steelhorn,** and is **DISMISSED** as to **Jeffreys**. **Count 4** will proceed against **Jeffreys, Lawrence,** and **Willis** in their official capacities and against **Wexford** in its individual and official capacities. **Count 4** is **DISMISSED** as to **Jeffreys, Lawrence, Willis, Siddiqui, Crain,** and **Skidmore** in their individual capacities. **Count 5** is **DISMISSED without prejudice.**

Any claims brought against **Evoli, Armbuster, Clovis, Jones,** and **Kern** are **DISMISSED without prejudice**, and the Clerk of Court is **DIRECTED** to **TERMINATE Evoli, Jones,** and **Kern** from the docket.

The Motion for Recruitment of Counsel (Doc. 10) is **DENIED.**

Page 19 of 22

The Court **DENIES** the request for a temporary restraining order and **DEFERS** ruling on the request for a preliminary injunction. (Docs. 11, 12). Defendant Lawrence is **ORDERED to respond to the request for a preliminary injunction within 14 days of service of the pleadings in this case.**

Because these claims pertain to medical issues, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for **Jeffreys** (official capacity only), **Lawrence** (official capacity only), **Willis** (official capacity only), **Wexford, Siddiqui, Crain, Skidmore, Moldenhauer, Zimmer, Butalid, Robert, Burner, Jetton, Bennett, Matt, Harmon, Kenfred, Newton, Dewayne, Knight, Evanger, Bender, Clark, Corey, Latrent, Oetjen, Anderson, Burns, Kirk, Burt, Williams, Walters, Gregson, Hamby, Rayburn, Tripp, Engelage, Mary Ann, Lang, Liz, Sharon, Melissa, Racheal, Steelhorn, Crawford,** and **John Does 1** and **2** (once identified):   (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, the Motion for Temporary Restraining Order and Preliminary Injunction and Supplement (Docs. 11, 12), and this Memorandum and Order to Defendants' place of employment as identified by Knox. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by Knox, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known

address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the unknown defendant until such time as Knox has identified him or her by name in a properly filed motion for substitution. Knox is **ADVISED** that it is his responsibility to provide the Court with the name and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g)**. Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Knox, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Knox is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   September 22, 2021**

　　　　　　　　　　　　　　　　_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.