IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TED KNOX,**<br><br>     **Plaintiff,**<br><br>v.<br><br>**WEXFORD HEALTH SOURCES, INC., et al.,**<br><br>     **Defendants.** | Case No. 21-CV-00483-SPM |

### MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Michael Moldenhauer; Mary Zimmer; Alberto Butalid, M.D.; Ashley Anderson; Wexford Health Sources, Inc.; Samantha Stellhorn; Danielle Conner; and Mohammed Siddiqui, M.D. (Doc. 375). *Pro se* Plaintiff Ted Knox filed a Response. (Doc. 388). Defendants filed a Response to Knox's additional material facts (Doc. 395) as well as a Reply (Doc. 396). Having been fully informed of the issues presented, this Court **GRANTS in part** and **DENIES in part** the Defendants' Motion for Summary Judgment.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

*Pro se* Plaintiff Ted Knox is an inmate presently incarcerated at Pinckneyville Correctional Center in Pinckneyville, Illinois. (*See* Doc. 376, Ex. A, p. 8). The instant suit arises from allegations that, while Knox was incarcerated at Menard

---

[1] The following facts are undisputed unless the Court indicates otherwise.

Correctional Center in Menard, Illinois, Defendants were deliberately indifferent to Knox's serious medical need when they denied and delayed his insulin treatments and forced him to walk up flights of stairs to receive his insulin treatments. (*See* Doc. 1). He suffers from several medical issues. (*Id.*, Ex. A, p. 2). Knox is morbidly obese, has left hip osteoarthritis, an enlarged heart, high blood pressure, a partial collapsed lung, and is also diabetic. (*Id.*). While he was housed in West House, Knox received his insulin shots at his cell. (*Id.*, p. 1). On November 27, 2019, he was moved from West House to North Two House, One Gallery (North 2). (*Id.*). North Two House, One Gallery houses low-aggressive inmates who are in need of regular or specialized medical attention, including inmates on hospice, inmates who require the use of wheelchairs or crutches, or inmates who have diabetes. This housing unit also houses all of the general population inmates who have low gallery permits. (*Id.*). Throughout the entirety of the alleged events, Knox had a low gallery permit, which mandated that he was not to walk up any flight of stairs. (Doc. 395, Ex. H).

Needles are not allowed on the gallery in North 2 according to IDOC policy; therefore, all incarcerated persons requiring use of a needle to receive their medication must be taken in the fifth-floor infirmary. (Doc. 388, p. 46, ¶ 10).

From December 10, 2019, through February 9, 2020, Knox missed his insulin treatment on several occasions. (Doc. 376, Ex. C, ¶ 13, 16; *id.*, Ex. D, ¶ 13, 16; *id.*, Ex. J, pp. 273–74, 280–81). Knox states that on those occasions, he missed his insulin

treatment because he was physically unable to walk up the stairs to the infirmary. (Doc. 388, Ex. A, ¶ 7).[2]

On December 6, 2019, Knox saw N.P. Moldenhauer. (Doc. 388, Ex. A, ¶ 10). N.P. Moldenhauer did not renew Knox's permit, as he believed that Knox did not meet the qualifications for such a permit. (*Id.*).

On December 22, 2019, Knox had an appointment with Dr. Butalid for his complaints about walking up the stairs for his insulin treatment. (*Id.*, ¶ 12). Dr. Butalid stated that he was not "about to change any policies for insulin treatment in North-Two and [Knox] would have to take that issue up with Dr. Dr. Siddiqui, the medical director." (*Id.*). At this appointment, his low gallery permit was extended another year. (*Id.*).

On December 30, 2019, Knox saw N.P. Zimmer to renew a prescription for foot cream. He told her that he was having sharp pains shooting down his left side and that the pain becomes more severe every time he walks up and down the stairs hand cuffed for his insulin shot. N.P. Zimmer yelled that she did not have time to discuss any other issues and that she "had heard about [his] complaints regarding insulin treatment in North-Two." (*Id.*, ¶ 16).

---

[2] The Court may consider Knox's Complaint and his Statement of Material Facts in his Response as evidence at the summary judgment stage, as both of these documents were signed and sworn under the penalty of perjury. "A verified complaint—signed, sworn, and submitted under penalty of perjury—can be considered 'affidavit material' provided the factual allegations otherwise satisfy the affidavit criteria specified in Rule 56 of the Federal Rules of Civil Procedure and the declarant complies with 28 U.S.C. § 1746, which sets forth the requirements for verification under penalty of perjury." *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020) (citing *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996) (internal citations omitted)). Moreover, a plaintiff's "sworn declaration . . . [is] sufficient to raise a genuine factual dispute at the summary judgment stage." *Hernandez v. Lee*, 128 F.4th 866, 870 (7th Cir. 2025).

On January 4, 2020, Knox had another medical appointment with Dr. Butalid. (*Id.*, ¶ 17). Knox ask for a permit to have his insulin administered at his cell door and told Dr. Butalid that he was in severe pain as a result of walking up the stairs. (*Id.*). Dr. Butalid stated he did not make the policies at Menard, and that he would not issue a permit for "cell front insulin" or for the use of the elevator. (*Id.*).

On January 9, 2020, Knox was called to Dr. Butalid's office to discuss his insulin refusals. (*Id.*, ¶ 18). Knox alleges that he explained to Dr. Butalid that he was not refusing his insulin treatments but that the nurses and nonmedical staff were refusing to provide him insulin on days he was physically unable to walk up the stairs. (*Id.*). Ultimately, Nurse Lang, who was also at the meeting, interrupted Knox. Nurse Lang began shouting that Knox was "a fat and lazy grievance writer" and then called for correctional officers to come retrieve Knox from the office because "the appointment was over." (*Id.*).

Knox was then seen by N.P. Moldenhauer on January 24, 2020. (*Id.*, ¶ 22). N.P. Moldenhauer refused to issue Knox a permit to have his insulin administered at "cell front" or a permit to access the elevator for insulin treatments. N.P. Moldenhauer prescribed physical therapy so that Knox would become more mobile so that he could make it up the stairs. (Doc. 395, p. 13). Knox attests that he "continued to be in great pain and it felt like he was dying." (Doc. 388, Ex. A, ¶ 23).

N.P. Anderson administered Knox's insulin treatment on January 2, 4, 8, 9, 16, 17, 22, 23, and 28, as well as February 5, 13, 14, 19, 20, and 27, 2020. (Doc. 366, Ex. G, ¶¶ 5, 7).

Knox had a medical appointment with Dr. Siddiqui on February 11, 2020. (*Id.*, ¶ 24). Dr. Dr. Siddiqui stated that "he was fed-up with all of [Knox's] crying," and issued an elevator permit. (*Id.*). On February 14, 2020, Knox was moved to North One House. (*Id.*, ¶ 25). In North One, Knox was given his insulin treatment at his "cell front." (*Id.*).

Knox filed the instant lawsuit on May 14, 2021. (*See* Doc. 1). Knox is proceeding on the following counts: an Eighth Amendment deliberate indifference claim against Defendants N.P. Moldenhauer, N.P. Zimmer, Dr. Butalid, N.P. Anderson, Stellhorn, Conner, and Dr. Siddiqui for repeatedly denying Knox insulin treatments (Count 2); an Eighth Amendment deliberate indifference claim against Defendants N.P. Moldenhauer, N.P. Zimmer, Dr. Butalid, N.P. Anderson, Stellhorn, Conner, and Dr. Siddiqui for forcing Knox to walk up flights of stairs to receive his insulin treatments in violation of his lower gallery permit (Count 3); and an Eighth Amendment claim against Wexford for maintaining a policy, custom, practice, or procedure of denying insulin treatments to inmates in North 2 who are physically unable to walk to the designated room for treatment (Count 4). Defendants filed the instant Motion for Summary Judgment on November 14, 2024. (Doc. 375). Knox filed a Response on December 10, 2024. (Doc. 388). Defendants filed both a Response and Reply on January 16, 2025. (Docs. 395–96).[3]

---

[3] Defendants filed a Response to Knox's Statement of Additional Material facts (Doc. 395) and a Reply to the merits of Knox's Response (Doc. 396).

## APPLICABLE LAW AND LEGAL STANDARDS

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008) (quoting *Springer v. Durflinger,* 518 F.3d 479, 483 (7th Cir. 2008)). The non-movant cannot simply rely on its pleadings; the non-movant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71

F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994); *Celotex*, 477 U.S. at 323–24).

## ANALYSIS

### I. Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment and deliberate indifference to the "serious medical needs of a prisoner [which] constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Claims for deliberate indifference have an objective and a subjective component. *Estelle v. Gamble*, 429 U.S. 97 (1976). Knox must establish that he suffered from an objectively and sufficiently serious medical condition. *Cesal v. Moats,* 851 F.3d 714, 721 (7th Cir. 2017). Knox must also show that Defendants actually knew of, but disregarded, a substantial risk to the inmate's health. *Cesal,* 851 F.3d at 721. "Intentional delays in medical care may constitute deliberate indifference, even if the inmate's medical condition is non-life threatening." *Id.* at 722 (quoting *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011)). "A doctor's choice of 'easier and less efficacious treatment' for an objectively serious medical condition also may be sufficient . . . [,] [b]ut 'mere disagreement with a doctor's medical judgment'

is not enough to support an Eighth Amendment violation." *Id.* (first quoting *Estelle*, 429 U.S. at 104 & n.10; then quoting *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010)).

Additionally, it is well-settled that mere negligence is not enough to establish a Defendant's deliberate indifference. *See, e.g.*, *Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986). In fact, even gross negligence is insufficient. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Instead, deliberate indifference is comparable to criminal recklessness. *Thomas v. Blackard,* 2 F.4th 716 (7th Cir. 2021) (citing *King*, 680 F.3d at 1018). "'Reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) (quoting *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources*, Inc., 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (quoting *Zaya v. Sood,* 836 F.3d 800, 805–06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant knew better than to make the medical decision that [he] did." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th

Cir. 2016)) (citation modified)). A medical professional's choice of an "easier and less efficacious treatment" can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *Berry*, 604 F.3d at 441 (quoting *Estelle*, 429 U.S. at 104 & n.10). The Seventh Circuit has "characterized the standard as imposing a high hurdle on plaintiffs because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)).

    Knox presents two separate deliberate indifference claims. The first is that the Defendants were deliberately indifferent to Knox's diabetic condition when they failed to provide an alternative means for him to receive his insulin when he could not climb the stairs to receive it in the infirmary (Count 2). The second is that the Defendants were deliberately indifferent to Knox's chronic hip pain by forcing him to use the stairs despite his complaints that it was causing him severe pain (Count 3). Here, the Defendants do not argue that Knox's diabetic condition or his chronic hip pain are not severe medical conditions. Instead, they focus only on whether their treatment constituted deliberate indifference. The critical factual issue is which Defendants were made aware that Knox was not receiving his insulin and that he was in pain from being forced to take the stairs, and if so, whether each of their actions constituted deliberate indifference. The Court will analyze each Defendant's actions as to both Counts 2 and 3.

### A.     Defendants Dr. Siddiqui and Dr. Butalid

Defendants argue that neither Dr. Siddiqui nor Dr. Butalid compelled Plaintiff to use the stairs to receive insulin treatment, refused to provide him with insulin treatment, or made aware of his alleged issue using the stairs. (*See* Doc. 376, p. 13). In his Response, Knox argues that Dr. Siddiqui refused to ensure that Knox was receiving his insulin in light of Knox's numerous complaints that he made directly to Dr. Siddiqui about the denial of his insulin. (*See* Doc. 388, p. 26). Knox also argues despite receiving numerous complaints from Knox about his diabetic and hip conditions, Dr. Butalid failed to adequately treat him and made comments suggesting a "clear indifference" to Knox's medical needs. (*Id.*, p. 26–27). Defendants argue in their reply that the evidence Knox provides of his complaints fails to mention any doctor, and after meeting with Knox on February 11, 2020, Dr. Siddiqui issued Knox an elevator permit, which was exactly what Knox sought. (Doc. 396, p. 2–3).

Defendants claim that neither Dr. Siddiqui nor Dr. Butalid were ever made aware of Knox's pain when he took the stairs and his inability to receive insulin when he could not. However, Knox wrote an Emergency Grievance, dated January 12, 2020, in which he states that he had an appointment with Dr. Butalid to discuss "insulin refusal." Knox attempted to explain to Dr. Butalid that he was not refusing his insulin shots, but that medical staff had been refusing to bring the insulin to the cell front on days where he was physically unable to walk due to his hip pain, and that his permit was not being honored. (Doc. 388, Ex. 1). Dr. Siddiqui admits to responding to this emergency grievance on January 24, 2020. (Doc. 388, Ex. 38, ¶ 10). Dr. Siddiqui also

admits that he knew on January 24, 2020 that Knox stated he does not get up for insulin because of his left hip pain because he co-signed a response memorandum to Plaintiff's grievance on that date stating that he was unable to come out of his cell due to his health conditions, including left hip arthritis (*Id.*, ¶ 8). At that point, then, the evidence indicates not only that Dr. Siddiqui knew that Knox was not receiving his insulin, but also that his hip pain was so severe that he could not come out of his cell, let alone ascend the stairs. Similarly, Knox attests that he met with Dr. Butalid twice, on January 4 and 9 of 2020, in both cases notifying Dr. Butalid that he had severe left hip pain that prevented him from receiving his insulin and that his lower gallery permit was not being honored. (*See* Doc. 388, Ex. A, ¶¶ 17–18). The medical records corroborate this claim, as Dr. Siddiqui noted that Knox was "not going to the area [to receive his insulin]" due to his hip pain. (*Id.*, Exs. S, U). This demonstrates that Dr. Butalid was aware of Knox's severe pain and his inability to travel to the infirmary to receive insulin beginning on January 4.

Knox attests, nor do Defendants appear to challenge, that his hip pain was severe and that he would become severely ill following missed doses. (*See* Doc. 388, Ex. A). Therefore, there is no dispute that Knox's inability to receive insulin and his hip pain qualify as serious medical conditions. Knox missed doses on January 6, 10, 12, 14, 15, 24, 25, 30, and 31, 2020, as well as February 2, 3, 4, and 6 of 2020. All told, Knox became severely ill several times from missed doses over a multi-week span between his arrival at North-2 House and the issuance of his elevator permit. Knox asserts, with evidence from the record, that Dr. Butalid and Dr. Siddiqui knew of

Knox's severe hip pain and his inability to receive insulin due to this hip pain no later than January 4 and January 24, respectively. Dr. Siddiqui and Dr. Butalid deny they had this knowledge, creating a genuine issue of material fact. If this dispute is resolved in favor of Knox, Dr. Siddiqui and Dr. Butalid would have been aware of Knox's inability to receive his insulin and his hip pain for more than a month before he was ultimately issued an elevator permit and subsequently moved to where he could receive cell-front treatment, missing several insulin doses in the interim. The Court finds that this length of time may be sufficient for a reasonable jury to find that Dr. Siddiqui and Dr. Butalid acted with deliberate indifference as to both of Knox's medical conditions. While both Dr. Siddiqui and Dr. Butalid argue that they never compelled Knox to use the stairs if he was suffering from hip pain, the Court finds that argument uN.P.ersuasive. These facts are analogous to those in *Robinson v. Hedden*, 2022 WL 600836, at *6 (S.D. Ind. Feb. 25, 2022). There, the district court denied summary judgment when Defendant, a medical professional, continued to rely on a course of treatment—deferring insulin administration to the custody staff without intervention—for weeks after it proved to be ineffective. In short, the Defendants may still be found to have acted with deliberate indifference where they fail to intervene and provide an alternative course of treatment where the current treatment is ineffective. Here, the facts demonstrate that both doctors were aware of Knox's problematic hip pain and effects from missed insulin doses, yet did not provide an alternative course of treatment for nearly two months. The fact that Knox was ultimately issued an elevator permit indicates that an alternative course of treatment

was available, and, as in *Robinson*, it is for the jury to determine whether Dr. Siddiqui and Dr. Butalid's actions were deliberately indifferent. Summary judgment is therefore denied as to Dr. Siddiqui and Dr. Butalid.

**B.      Defendants N.P. Moldenhauer, N.P. Zimmer, and N.P. Anderson**

Defendants argue none of these three defendants forced Knox to use the stairs to get his insulin, nor did they ever refuse to provide insulin to him. (*See* Doc. 374, p. 15). Knox responds that these defendants all failed to take action regarding his condition. (Doc. 388, pp. 26–27). Defendants reply that N.P. Moldenhauer told Knox of the importance of taking insulin, N.P. Zimmer was never involved in Knox's issues with his insulin, and that N.P. Anderson referred Knox to a doctor when he refused insulin. (*See* Doc. 396, pp. 4–5).

Knox saw N.P. Moldenhauer twice: on December 6, 2019, and on January 12, 2020. (Doc. 388, Ex. A, ¶ 10, 22). At the December 6 meeting, N.P. Moldenhauer examined Knox and determined that he did not meet the criteria for a lower gallery permit, believing that Knox was able to take the stairs. (*Id*.). Knox does not dispute nor provides contrary evidence that N.P. Moldenhauer was exercising his professional judgment as a nurse practitioner in making this determination. Accordingly, Knox's allegations that N.P. Moldenhauer was deliberately indifferent to Knox's pain from walking up the stairs is refuted by the evidence in the record, as N.P. Moldenhauer believed Knox did not qualify for a lower gallery permit based on his medical condition. Furthermore, the second time he saw Knox, N.P. Moldenhauer prescribed physical therapy so that Knox could make it up the stairs. (*Id.*, Ex. 10).

This counsels the conclusion that as to Count 3, the undisputed material facts show that Moldenhauer was not deliberately indifferent, as he believed that Knox needed to become more mobile so that he could make it up the stairs, and to that end, prescribed physical therapy.

However, regarding Count 2, Knox told N.P. Moldenhauer at the January 24 meeting that he was not receiving his insulin because he could not climb the stairs to get to the infirmary, due to his left hip hurting. (*Id.*). Therefore, like Dr. Siddiqui and Dr. Butalid, N.P. Moldenhauer was aware, for over a month before the elevator permit was ultimately issued, that Knox was not taking his insulin due to his inability to climb the stairs. Knox presents evidence that N.P. Moldenhauer rejected his plea for elevator access despite this knowledge. Defendants fail to provide any evidence that N.P. Moldenhauer took any actions to provide an alternative course of treatment. Knox proceeded to miss several insulin doses. As with Drs. Siddiqui and Butalid, a jury could reasonably find that N.P. Moldenhauer was deliberately indifferent by not taking action to ensure Knox could receive his insulin. Summary judgment is therefore denied as to N.P. Moldenhauer as to Count 2 only.

However, as to N.P. Zimmer, the evidence demonstrates that she was not materially involved in Knox's insulin treatment, nor the treatment of his hip pain. Knox alleges that he only met with N.P. Zimmer once, on December 30, 2019, where he requested Neurontin for his foot and that his nerve medication be renewed. (Doc. 388, p. 7). Knox has failed to adequately present facts that would demonstrate deliberate indifference. He does not state whether he told N.P. Zimmer that he was

unable to make it up the stairs to receive his insulin, nor did he mention anything about his lower gallery permit not being honored. At most, Knox states that N.P. Zimmer told him that she "had heard" about Knox's complaints, presumably regarding his hip pain and missed insulin doses. (*Id.*). But this fleeting remark is not specific enough to show that N.P. Zimmer was deliberately indifferent to Knox's medical needs. Typically, a singular interaction fails to constitute deliberate indifference. *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997) ("isolated instances of neglect . . . cannot support a finding of deliberate indifference"); *see also Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (holding that isolated incidents of delay cannot be construed as deliberate indifference). Here, Knox only met with N.P. Zimmer once, and the primary purpose of the interaction was to renew Knox's prescription for foot cream. Knox fails to present any evidence that N.P. Zimmer was made aware of Knox's specific ailments in the course of treatment; the only evidence of any of her knowledge is a vague remark made during treatment of an entirely separate medical issue. Accordingly, N.P. Zimmer is entitled to summary judgment.

As to N.P. Anderson, Knox claims that she was indifferent when she knew he was not receiving his insulin treatment but did not refer him to a doctor. However, this is directly refuted by the record. Knox's medical records reflect that on January 25, 2020, N.P. Anderson referred Knox to the doctor. (Doc. 395, Ex. A). Moreover, N.P. Anderson attests that she was unaware that Knox was not receiving his insulin due to his hip pain. (Doc. 388, Ex. 53). Knox does not present evidence nor argue to the contrary. As N.P. Anderson took action as to Knox's insulin condition and was

unaware of his hip pain, she is entitled to summary judgments as both Counts 2 and 3.

### C. Defendants Stellhorn and Conner

Defendants argue that neither Stellhorn nor Conner were involved in the administration of insulin, nor were they made aware of any of Knox's complaints. (*See* Doc. 376, p. 15–16). Knox responds that both Defendants should have intervened in his treatment. (*See* Doc. 388, p. 27). Defendants reply that neither Stellhorn nor Conner are qualified to provide medical treatment, nor were they made aware of Knox's issues. (*See* Doc. 396, p. 4). However, Knox attests that he informed Conner that he was being denied insulin treatment, and that he "feared he might die" if he continued to be denied insulin. (Doc. 1, Ex. A, ¶ 20). He also states that she refused to refer make a referral to medical staff. (*Id.*). Knox also states that he wrote Stellhorn a letter on January 5, 2020, complaining about the insulin procedures at North 2, and that he was under a lot of stress and discomfort. (Doc. 388, Ex. 26).

Even resolving all factual disputes in favor of Knox, his claims against Stellhorn and Conner fail as a matter of law. "If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . . . Non-medical defendants cannot simply ignore an inmate's plight . . . However, mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *see also Hayes v. Snyder*, 546 F.3d 516, 526-27 (7th Cir. 2009) (discussing how non-medical officials are entitled to defer to the professional judgment of medical

officials). Moreover, for a deliberate indifference claim to survive summary judgment, there must be sufficient evidence in the record for a reasonable jury to conclude that the defendant's deliberate indifference caused the plaintiff's injuries. *See Hoffman v. Knoebel*, 894 F.3d 836, 841 (7th Cir. 2018) ("[T]he official's act must . . . be the cause-in-fact of the injury . . . ."). Stellhorn and Conner are mental health counselors, not doctors or nurses responsible for Knox's medical treatment. *See Griffin v. Allen*, 2024 WL 5040997, at *11 (N.D. Ill. Dec. 9, 2024) ("[Defendant] may not have adequately responded to Plaintiff's request for surgery, but the record is clear that [Defendant's] supervisory authority was circumscribed to 'security, movement of inmates, maintenance, food service industries, internal investigations, personal property and safety and sanitation'—not medical care." (internal citations omitted). The court in *Griffin* concluded that Defendant's "failure to notify medical staff thus did not cause Plaintiff's injuries; it was the medical staff's knowledge of his condition and failure to provide adequate care that harmed him." *Id*. The Court finds this reasoning persuasive. As discussed *supra*, according to Knox, Defendants Dr. Siddiqui, Dr. Butalid, and N.P. Moldenhauer were made aware of Knox's inability to receive his insulin. All three Defendants were medical professionals. Not only were Stellhorn and Conner permitted to rely on those Defendants to exercise their professional judgment in administering Knox's insulin, even if they ignored Knox's complaints, while possibly negligent, do not rise to the level of deliberate indifference under the Eighth Amendment. Therefore, the claims against Stellhorn and Conner should be dismissed.

## II.     Eighth Amendment Unconstitutional Policy or Practice

The Seventh Circuit has held that "a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Wilson*, 932 F.3d at 521 (quoting *Iskander v. Village of Forrest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). "The plaintiff may try, however, to demonstrate that a private corporation has a company policy or rule that is the 'moving force of the constitutional violation.'" *Id.* (quoting *Iskander* at 128); *see Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

In Count 4, Knox alleges that Wexford employed diabetic insulin treatment policies and procedures that denied inmates with physical disabilities and medical low gallery permits in North Two insulin treatments unless they walked up several flights of stairs. (Doc. 1, Ex. A, pp. 34–35). This policy was then enforced and implemented by Defendants and resulted in his denial of insulin treatments and violation of his low gallery permit. (*Id.*). Wexford argues that Knox cites no evidence that there is a policy of arbitrarily denying insulin treatment within the North 2 general population cellhouse when inmates are not physically able to walk to the appointment site, or a policy of requiring inmates with physical disabilities and medical low gallery permits to violate the terms of their low gallery permit and walk up several flights of stairs in order to receive insulin. (*See* Doc. 376, p. 17). Knox responds that Wexford should have maintained a policy requiring that insulin be administered at the cell door for inmates with low gallery (B) permits. (Doc. 388, p. 28).

Wexford is correct that Knox has provided zero evidence of any unconstitutional policy at Wexford. Knox admitted that he is unaware if Wexford has a policy regarding insulin administration at the cell front. (Doc. 376, Ex. A, 39:17–22). Knox also admitted that he has never read Wexford's policies. (*Id.*, 44:12-18). Without evidence of an unconstitutional policy, a plaintiff's claim must be dismissed. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014); *Iskander*, 690 F.2d at 128. Knox has failed to provide any evidence that Wexford maintains any policy regarding cell-front insulin administration. Therefore, even considering the evidence in the light most favorable to him, Knox has failed to rebut Wexford's assertion that there is not a genuine dispute of material fact sufficient for his claims against Wexford to be presented to a jury.

## Conclusion

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** Defendants Michael Moldenhauer; Mary Zimmer; Alberto Butalid, M.D.; Ashley Anderson; Wexford Health Sources, Inc.; Samantha Stellhorn; Danielle Conner; and Mohammed Siddiqui, M.D's Motion for Summary Judgment. (Doc. 375). Count 2 as to Zimmer, Anderson, Stellhorn, and Conner; Count 3 as to Moldenhauer, Zimmer, Anderson, Stellhorn, and Conner; and Count 4 in its entirety are **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to terminate Zimmer, Anderson, Stellhorn, Conner, and Wexford Health Sources, Inc. as parties in this action. Count 2 shall proceed against Dr. Siddiqui, Dr. Butalid, and N.P. Moldenhauer; and Count 3 shall proceed against Dr. Siddiqui and Dr. Butalid only.

**IT IS SO ORDERED.**

**DATED: September 25, 2025**

                                          **/s/ Stephen P. McGlynn**
                                          **STEPHEN P. McGLYNN**
                                          **U.S. District Judge**